Good morning. You may please the court. I'm James Laughlin on behalf of the appellant, Marcelo De Jesumaria. For the court's permission, I'd like to reserve two minutes for my testimony as well. Certainly. And my plan is to split the remainder of my time between the venue and Batson issues, unless the court would like me to do otherwise. All right. With regard to venue, the court should start with the essential conduct elements test that the Supreme Court established for venue in Rodriguez Moreno, a case and a test that the government completely ignores. Under that applicable test, venue is appropriate only in the district where the conduct element occurred. Did your client make an objection to venue? No, Your Honor. So when did venue first come up? It came up after counsel changed and I raised it for the first time in the motion for a bail pending appeal. Okay. So during the course of the trial, if venue was incorrect, it became clear after the government put it in its case. Isn't that true? Yes, Your Honor. I think the record is clear that the government did not establish venue. Okay. And so the reason that you didn't waive venue is what? Is because, as the United States v. Solano, the Supreme Court recognized 20 years ago, the difference between waiver and forfeiture is the simple failure to raise something is forfeiture, which means something is reviewed but reviewed for plain error. Waiver is the intentional relinquishment or abandonment of a known right. There has to be some kind of affirmative step, and on this record there is no, and the government has never pointed to anything that would constitute an affirmative waiver. What they're arguing is that the mere failure to raise the issue is waiver, and what they do is they rely on a series of cases that predate Solano. Well, does U.S. v. Marsh predate Solano? No, it doesn't, but there's two reasons why that doesn't, or actually three reasons why that doesn't bind the court. The first is Marsh dealt only with the situation where venue was, the lack of venue was evident on the face of the indictment, which is not an issue here. But your client knew, if there was something wrong with venue, your client knew at the latest, at the close of the government's case, that there was something wrong. Correct, Your Honor. So it was evident at that point. What? So it was evident at that point. Correct, Your Honor, and I would prefer the trial counsel would have made a Rule 29 motion, but just as this court reviews other insufficient evidence claims that were not for plain error where there was no Rule 29 motion,  Well, why wouldn't the rationale of Marsh extend to that situation where it was evident, at least as of the time the government presented its case, that there was a defect in venue from your perspective? Well, that, Your Honor, rule was stated most recently by the court in 2000 in Ruelas-Aragon. And significantly, that case never used the word waiver, even though they're talking about a defect on the face of the indictment. What case, Marsh? Ruelas-Aragon in 2000. And I think it's because probably the panel that considered that case recognized that the court shouldn't use the word waiver when what they mean is forfeiture. But in that context, what they said was, Was that a venue defect case? Yes, it was. And what it said was that to preserve a venue defect when there's insufficient evidence at trial, you have to make a Rule 29 motion. And I don't contest that. It wasn't preserved by making a Rule 29 motion. But again, this Court's case law is clear on other insufficient evidence claims, that when there's no Rule 29 motion, it still goes ahead and reviews for plain error. In fact, the courts recognize that because the insufficient evidence standard under Jackson is so high anyway, the plain error standard doesn't really make that much of a difference. So assuming we agree with you and we apply plain error, tell us why this error substantially affected the fairness and integrity of these proceedings. Well, because, Your Honor, under the Court's case law, because it was insufficient evidence of venue, because the government didn't prove what they were required to prove, he should not have been convicted. But you could say that for any failure of proof. So what is it about this particular failure to establish venue that affects the fairness of the proceedings? Well, Your Honor, you're correct that I could say that about any standard of proof, and this Court has recognized that whenever there's a failure of proof, whether it's to an element. That's the plain error. Correct. But it even says that when the first four, in an insufficient evidence case when the first two prongs of the plain error are satisfied, the last two prongs are satisfied, because when a defendant should not have been convicted, it both affects his substantial rights and it seriously affects the integrity and integrity of judicial proceedings in general. So your argument is any time the first two prongs of the plain error test are met, the second two are automatically met? With regard to insufficient evidence, because if the first two prongs are met, that means the defendant shouldn't have been convicted. And if the defendant now has a conviction that he shouldn't have had, then that is plainly erroneous. That satisfies the second two prongs. So do you have a venue case that says that in terms of a failure to establish venue? Do you have a case that says that? With regard to plain error, no, I don't, Your Honor. Given my time, I would like to turn to Batson now, if that's all right with the Court. The totality of the circumstances in this case establish that the government used half its peremptory challenges to strike the only African-Americans on the veneer, namely two African-American women and a dark-skinned man who was either African-American or Latino but did not have a Latino surname. This serious disproportionate exclusion of African-Americans from the veneer is itself strong evidence of racial motivation. But if even one of these strikes was racially motivated, or motivated in substantial part by racial concerns, then the conviction must be reversed. What would you point to to support that? I take this is going to be your notion. To support the notion that the reasons given by the prosecution were pretextual. Well, Your Honor, I went through them in detail in the brief. I think I have time to talk about one. I'd like to talk about Juror No. 8. She is the grandmother and retired nurse, and the government conceded that given her job that she was well-educated and generally well-qualified to serve as a juror. But it struck her claiming that she was unwilling to talk about her family's circumstances. What was pretextual about that? Because when they asked her about her grandchildren, she said she didn't want to talk about it. Doesn't that reflect an unwillingness? I think if she had left it at that, that might. But what she said was she said that. She said, yeah, I don't even want to talk about it. And then within the space of five lines in the transcript, she said, you know, they're just having babies. That's why I didn't want to talk about it. So the most there was hesitation, not unwillingness, which I think is, and this Court has recognized in other cases, that when the government mischaracterizes what the juror actually said, that can be evidence of pretext. But the Court agreed with the government's observation. What do we do with that? Because it's the Court's role to determine the credibility of the prosecutor in the context of the reasons that are given for the peremptory challenges. And our review of that is for clear error. Would you agree? No, Your Honor. As I explained in my briefs, because the Court here didn't do a true Step 3 analysis, which I think is clearly established by this Court's case law in Alanis, Green, and Alvarez-Uloa, this Court does a de novo analysis, although I think the analysis, the results should be the same even if it does the typical review because clear error is established here. What is it that the district court should have done that it didn't do in your view? What it did was it basically said, it verified some of the factual observations. It said, yes, juror number three mispronounced some words, juror number six had a heavy accent, and I'm finding that there were race-neutral reasons for the strike. Race-neutral reasons for the strike is Step 2 of Batson. And this is almost exactly what happened in Green and Alvarez-Uloa, where the judge stopped at saying there are race-neutral reasons, didn't go on to make any finding, and I find these are the valid and legitimate reasons. Was an objection raised on that basis that the Court didn't complete the Batson analysis? No, but under Alanis in particular, but particularly Alanis and Alvarez-Uloa, that's not necessary. In both of those, Alanis especially said there's no reason to keep repeating a Batson objection once it's made. No, there's no reason to keep repeating the Batson objection, but if in your view the Court has not completed the analysis, why wouldn't you bring that to the attention of the judge so the judge could correct it on the spot? That would obviously be preferable, but what this Court did in both Alanis and Alvarez-Uloa was when there was no objection after the Court stopped at Step 2, the Court said not only was that a preserved objection, but we're going to do a de novo review. So I think that the Court's case law is clear that the defendant doesn't have to make a further objection. So if we were to do a de novo review on Juror No. 8, what would you have us look at? I would have you look at what her actual statements were during the voir dire process and compare it to what the government said about that and recognize, A, that contrary to what she said, she did not refuse to talk about her family. At most she hesitated. But it didn't say refuse, it said unwillingness. Right, but that implies that she just was completely not going to say anything about it, which is, like I said, in context it was a momentary hesitation. But what's more, they never explained the jump that that statement would be, oh, this suggests to us that she's going to be distracted throughout the trial. There's no indication whatsoever that would permit that leap. I mean, it's one of those reasons that's so implausible on its face that the Court should view it. And I know we've taken you over your time, and I'll give you a minute for rebuttal, but generally in the cases where we have given relief on Batson claims, there is some comparator that we use to determine that there was pretext. In this case, there is no comparator. So what case most closely resembles this case that has given Batson relief? Your Honor, I don't think I have one particular case because I think what we have here, I would point the Court to the Miller L-2, which recognized, I believe, in footnote 6, that the absence of being able to, when the government does, when the prosecutor does point to juror-specific things that doesn't lend itself to comparative juror analysis, that does not preclude Batson relief because otherwise it would render Batson inoperable. And, yes, I don't have a case I think that's on point because these are unique circumstances. What I tried to do in the brief was to lay out the general principles that this Court has recognized in its numerous Batson cases where it's granted relief and applied them to the situation. Are you familiar with the case of Feltner v. Jackson? I believe so, but I don't have it. That's my case where I did exactly what you are asking me to do and the Supreme Court slapped me down. Well, Your Honor, I promise if Your Honor does it this time, I'll do a better job of defending the Court. May I ask one question? Sure. What you're saying is that what the judge didn't do correctly after his finding that there was a presentation of race-neutral reasons is to articulate that those race-neutral reasons in his considered judgment were valid and were not pretextual. Something like that? Correct. Well, now, trial judges are under a great deal of pressure, and we know that. Those of us who've been trial judges, they have to make their minds up quickly. Here's what the judge said as to juror number eight. Her responses were odd in the sense, I agree, she did not respond to my questions. Isn't that enough to say these reasons are not pretextual? No, Your Honor. I think that that was just reaffirming the factual statement of what occurred. She then said, I'm finding race-neutral reasons for the strikes, not saying I'm finding there's no proof of purpose. But he's making a value judgment. Her responses were odd. Right? Right. She didn't respond to my questions. Isn't that enough to say that's a valid, non-pretextual, race-neutral basis? No, Your Honor, and I would point the court to Green and Alvarez-Oloa. So there's a specific verbal liturgy which must be pronounced in order to be constitutional. Is that your point? No. There are no, quote, magic words that the district court said. But what there has to be is some statement saying, I'm finding that these are the prosecution's true reasons. These are not the prosecutor did not act with. And simply agreeing with the prosecutor that her responses were odd is not enough. Correct, because there's a difference between acknowledging the factual predicate for it and then going to the step of I believe that's really why the prosecutor said it. As long as the factual predicate, he doesn't repeat what the prosecutor said. He makes a judgment that the answers were odd. Isn't that a determination that they were not pretextual? No, Your Honor. I disagree with that. Thank you. All right. Thank you, counsel. We'll give you a minute for rebuttal because we have to go over your time. We'll hear from the government. Please proceed, counsel. Good morning. Good morning. May it please the court. Jeff Chemerinsky on behalf of the appellee, United States of America. I'd like to start with the Batson challenge and explain why applying the highly deferential clear error standard, this court should affirm the district court's denial of defendant's Batson challenge. Here the government provided race-neutral reasons for each of its challenges. The court in its observations noted the exact same behaviors that the government noted. But the court didn't, opposing counsel's view is that the court did not go to the third step and say the reasons given were not pretextual. Your Honor, I think the court did do that. I think that the court in its analysis, the court clearly demonstrated it understood the law in its analysis. It walked through each of the three steps. Finally, it got to the third step where it analyzed the government's reasons. It walked through, juror by juror, its own observations, which matched the government's observations exactly, and then said it also noted that the defendant in the case was not African-American, and then it said I'm finding race-neutral reasons. I think the court ---- What was the point of saying that the defendant is not African-American? What does that have to do with the analysis? Yes, Your Honor. There's case law stating that one factor in the determination is whether the defendant is of the same race as the jurors being struck. What case says that? It's in a number of cases. Most recently, the Supreme Court in Foster took it into account in its analysis in saying that it was an African-American defendant, and the Supreme Court in its analysis walked through the prosecution's striking of African-American jurors. Right, but what case says that it's important to note that the defendant is not the same race as the jurors who are being stricken? It's ---- What case specifically says that? Yes, because it was odd to me that the judge would say the defendant is not African-American. He appears to be a light-skinned individual. That was a very odd statement to make in the context of a Batson review. So what case makes a statement like that pertinent? Your Honor, I think that, first, the government cites a number of cases in its briefing where that is a factor the court considers. I also think that it's ---- Okay. Tell me a case that supports the notion that it's a pertinent consideration that the jurors being struck are a different race than the defendant. What case says that that's a factor to be considered by the court? Your Honor, I can't provide a case. I think it's in the government's briefing. But there are a number of cases that emphasize the importance of the similarity of the race between the jurors being struck and ---- Right, that's a factor to be considered if the juror being stricken and the defendant are of the same race. But I'm not aware of a case that says it's a factor to be considered if the jurors being stricken and the defendant are a different race, and that militates toward a finding of no pretext. Well, Your Honor, I think that if they're the same race and that militates towards a finding against the government, conversely, the fact that they're different races should ---- is a factor that certainly at least would be neutral in the case. Well, I don't know about that because I haven't seen a case saying that. But the focus is on whether or not there is an effort to strike any particular ethnic group regardless of the race of the defendant. And so I'm curious as to why the judge would make that statement. And I'm curious as to whether you have a case that would support that particular statement in this context as being pertinent. Yes, Your Honor. I think it goes to the overall atmospherics of the case. This was a sexual assault on an aircraft case. It was a case where race was not any component in the matter. And so I think the judge was in that statement was simply essentially pointing out the atmospherics of the case, which I think was appropriate at the time. I think the court was ---- there's a ---- and I think the Supreme Court in Foster and a number of other cases have said there's something implicitly wrong with the government striking jurors in, say, a death penalty case where there's an African-American juror. And so I think the court was pointing out the atmospherics of this case where there's no racial component that's clear from the record. Other than striking all of the African-American jurors. Well, yes, and of course, however, the court went through each of the reasons the government provided one at a time and found that those were race-neutral reasons. But the reasons may have been race-neutral, but were they believable? The reason given for juror number eight, who was originally juror number 17, is this. So there the government had some concerns because when asked about what her grandchildren did, she said she didn't even want to get into it. It raised a little bit of a red flag for us that she might have had some issues in her family that might distract her and keep her from focusing on the evidence. So that's what the concern is. Now, that may be a race-neutral reason, but is it believable? Yes, Your Honor. And the court, in fact, went through in its own analysis, which, again, should get clear ear review here, observed the exact same behavior and conduct. Well, that actually raises another question. Can the court supply its own reasons? Doesn't it have to accept the reasons given by the prosecution in this case? Your Honor, I think the court did not supply its own reasons. The court affirmed what the government provided in its reasons. The court went through and said she seemed to be hesitated, as the government noted. She did – in the court's words, it was her behavior was odd. In the government's description, it raised a red flag. I don't think that's describing new reasons. I think that's affirming what the government said. Well, how about when the court decided to say, with respect to another juror, I will say that she did have a heavy accent, apparently appears to be Caribbean. Wasn't that the court supplying its own reason? Well, there the government noted the heavy accent as well. I think where the court noted the origination of the juror or the origin of the juror, I don't think that that's a relevant characteristic that the government's relying on at all. How about the mispronunciation of the words? Was that a believable reason for striking a juror? Yes, Your Honor. And the court, again, observed the exact same thing. And I think that the cold record doesn't do justice to sort of the – what was observed in the courtroom. And that's what a number of Supreme Court cases have said, such as Hernandez, noting that the judge is in the best position to observe both the conduct of the jurors at the time of the strikes and the government's reasons in providing the – its explanations for the strikes. Were you the trial attorney for this case? I was, as well as Ms. Myers, Your Honor. And here the court not only – the court had sat through a whole prior proceeding with these attorneys and was familiar with them and was in a position to observe their credibility in providing the reasons for the – for striking these jurors. There was a credibility analysis here or even an issue, a credibility issue? There was some suggestion that these jurors were lying? No, the credibility issue would be for the – excuse me, the government's – the credibility of the government's explanations in striking these jurors. So opposing counsel seems to think de novo review applies. Why is that not correct? Yes, Your Honor. Opposing counsel relies on three cases to explain why de novo review should apply, Alanis, Alvarez, Yulo, and Green. But all three of those are distinguishable. In Alanis, the court, for example, simply said that it's finding plausible reasons for the strikes. That's very different and provided no further analysis. In Alvarez-Yulo, the court said during its analysis that it's the government's reasons that matter, not the court's reasons. And finally, in Green, the court overlooked a very clear comparison analysis that overwhelmingly showed race-based reasons for the strikes. I think all three of those cases stand for the proposition that the – or all three of those are instances in which the district court fundamentally misapplied or indicated that it misunderstood the law. Here there's no indication from that. In fact, in the district court's post-trial order, it said that it was necessarily making a credibility determination that the government was not – that the government strikes were not motivated by race. Where is that in the record? That's on pages 43 and 44. The district court said, quote, the court did not and does not find any evidence demonstrating that despite the neutral explanation of the prosecution, the peremptory strikes in the final analysis were race-based. And again, that's the court's own analysis of the reasons provided, which should get clear error review. The three cases cited, Alvarez-Yulo, Alanis – Clear error or plain error? Clear error, Your Honor. There's no objection? The – practically it doesn't make a big difference. I think the – What about the fourth element of Alano? Well, I do think that there's a few reasons that, Judge Bea, that you bring up that I think are important. First, defense counsel, as the government provided its reasons, didn't object, just sat there silently. I think defense counsel's argument is based on an assumption that here what happened – or it really relies on this idea that here what happened, the government stood up, it provided race-neutral reasons that were – but those were purely pretextual. And defense counsel sat there and listened and failed to object. And the court sat there and listened and failed to object – and failed to – just simply accepted it. I think implicit in that is really an idea that defense counsel would – in such a scenario would accept the government's reasons and not object. Or the court would accept pretextual reasons for something as bad as race discrimination and not object or not take issue with it. Here, I think the fact that defense counsel failed to object to the reasons provided by the government is really an important factor for the court to consider, either in finding that defense arguments are waived or subject to plain error view, or in finding that they're simply manufactured for purposes of appeal. If the government's reasons were pretextual, there's every reason to think defense counsel or the government – or the court would have recognized that at the time and said something. And so the case that you cite for the proposition that the defense counsel has to continue to make the bets and objection is which case? Chenko, Your Honor, as well as Contreras-Contreras. Both of those cases stand for that proposition. And those cases – defense counsel responded that Alanis is inconsistent with those cases. But I think Alanis stands for a different proposition. Alanis says in its objection analysis says that for the court to continue to take all three steps, there's not a need for a continuing objection. What we're saying, Your Honor, is that for the court, that the failure to object waives or at least is a clear factor that the court can consider in determining whether the government's reasons were pretextual. And here there's every reason to think that if they were pretextual, defense counsel would have said something. Instead, the record implies that defense counsel heard the government's reasons and maybe simply accepted them and saw no need to take further issue with them. Counsel, you're way over your time, but could you briefly address the Venue issue? Yes, Your Honor. This court since 1974 in Porter has held that Venue is waived if it's not raised. In 2000, this court clarified that Venue, if it's raised, if it's clear from the indictment, has to be raised pretrial. If it's not clear from the indictment, has to be raised in a post-trial motion. Defendant here didn't either. Didn't raise it pretrial or in a post-trial motion for acquittal. Under those cases, which including and then Marsh, which this court recently held, again, a Venue challenge is waived. But Marsh is where the wrong Venue is apparent from the face of the indictment. You don't say that that's the case here, do you? Your Honor, I do think it's apparent from the indictment. It's also notable here that it was apparent from the discovery defense counsel obtained as well as from the first trial defendant sat through in which the government relied, presented basically the exact same evidence. And if defendant here knew going into this case, into this trial, the theory of Venue, there's every reason to think he intentionally chose to waive Venue because Los Angeles was the most convenient Venue for him. He lives in Los Angeles, chose to fly to Los Angeles, and failed to at any point raise a Venue challenge. Under this court's precedence, under Porter and Marsh and Ruelas-Arragin, a Venue challenge, if not raised, is waived, and that's what happened here. All right. Thank you, counsel. Rebuttal? We'll give you two minutes for rebuttal. Your Honor, I would just like to make two points with regard to the Batson issue. The first is that the court should recognize that the government's really proposing a new rule when it says that there's any obligation to make a further objection after the court denies the Batson motion. I don't think that's consistent with this court's extensive line of Batson cases, and the one case that they actually the two cases they rely on are easily distinguishable. First of all, Contreras-Contreras was just a case where there's no Batson objection whatsoever. Well, but in explaining its ruling on page 1105 of that opinion, the court recited a Fifth Circuit decision and a Second Circuit decision which says a Batson objection is waived by failing to challenge the government's explanations for the periphery challenges. Yes, and I don't think that the court should read too much into parentheticals when the issue in the case was this defendant made no Batson objection whatsoever. Can we still review it? As the Supreme Court has recognized, questions that merely lurk in the record that aren't really at issue aren't really precedent when the court makes a statement, certainly not precedent when they appear in parentheticals. And, of course, the other case they rely on is Chenko. Well, what's not a parenthetical is the court's ruling that says we review for plain error because Contreras-Contreras counsel not only failed to make an objection, initial objection, but failed to object to the prosecution's volunteered explanation. Correct. This was a case where there was no Batson motion at any time. The defendant, if I recall correctly, the district court on their own kind of raised the Batson issue. The prosecutor responded, and it was just dropped at that. And we said that the defendant failed to object to the prosecution's volunteered explanation. True. But it did not say that it would review for plain error if he had made the Batson motion initially. And then with regard to Chenko, I'm not even sure that that's consistent with the Court's later cases, but certainly it's limited to its facts, which are suggests that a defendant cannot challenge the factual predicates for the first time on appeal. If I was up here saying that juror number three didn't mispronounce the words or juror number six didn't have an accent, then that would be one thing. But I'm taking all of the factual findings at face value. But I thought your position was we reviewed de novo for that reason. And our cases appear to say that we review for plain error in that circumstance. And I disagree with that. I think I'm out of time, Your Honor. Oh, that's okay. You can finish your thought. I was just going to say that I think that the plain error that the Court would be recognizing a new rule if it said that defendants have an obligation after the Court gives a ruling on the Batson motion to then make a further or as the Court rules to call it an exception to the ruling to fully preserve the issue. Would we be making a new rule if we reviewed for clear error? I think the Court would be acting contrary to its rulings in Alanis, Alvarez, Ulloa, and Green. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for your helpful argument. The case just argued is submitted for decision by the Court. The next case on calendar for argument is United States v. Gonzalez.
judges: Rawlinson, Bea, Eaton